UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RAISER,<br><br>                     Plaintiff,<br><br>v.<br><br>SAN DIEGO COUNTY, ET AL.,<br><br>                     Defendant. | Case No.: 19-cv-0751-GPC-KSC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS.**<br><br>**ECF No. 12, 23.** |

Pending before the Court is Defendant County of San Diego's ("Defendant") motion to dismiss Plaintiff Aaron Raiser's ("Plaintiff") first three causes of action (the "§ 1983 claims") in his first amended complaint ("FAC"). This case presents three issues: (1) whether the Court lacks jurisdiction to hear the § 1983 claims; (2) whether Plaintiff's § 1983 claims fail on a theory of *respondeat superior*; and (3) whether Plaintiff adequately alleges claims under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The Court **GRANTS** Defendant's motion to dismiss the § 1983 claims, **FINDS** the jurisdictional issue moot, and **GRANTS** Plaintiff leave to amend the complaint.

**I.    Procedural Background**

Plaintiff filed his initial complaint against Defendant County on April 23, 2019. ECF No. 1. On June 28, 2019, Defendant filed a motion to dismiss Plaintiff's initial

1

complaint. ECF No. 7. On July 9, 2019, Plaintiff filed the FAC, which rendered Defendant's initial motion to dismiss moot. ECF No. 9.

Plaintiff's FAC raises five claims against Defendant: (1) that Plaintiff was unlawfully detained on or about April 30, 2017 by one of Defendant's employee officers ("Doe 1"); (2) that Plaintiff was unlawfully detained on or about August 7, 2017 by one of Defendant's employee officers ("Doe 2"); (3) that Plaintiff was unlawfully detained on or about March 29, 2018 by one of Defendant's employee officers ("Doe 3"); (4) that Plaintiff was falsely imprisoned by Doe 3 on or about March 29, 2018; and (5) that Defendant violated the Bane Act when Doe 3 made "threats of violence against Plaintiff" for asserting his right to be free from unreasonable seizures on March 29, 2018. FAC at ¶¶ 16–61. Plaintiff incorporates two transcripts of recordings he made during the April 30, 2017 and March 29, 2018 detentions into the FAC by reference. *See* FAC at pp. 10–16 (containing, as Exhibit 1, a transcript of Plaintiff's audio recording made during the April 30, 2017 detention); FAC at pp. 17–19 (containing, as Exhibit 2, a transcript of Plaintiff's audio recording made during the March 29, 2018 detention).

Plaintiff's FAC does not include a separate cause of action under *Monell*. Instead, Plaintiff alleges elsewhere in the FAC that Defendant has "a custom, policy and/or pattern of unlawfully detaining citizens without legal basis." FAC at ¶ 24. Likewise, Plaintiff alleges that "all Defendants' managing agents, officers and directors, had advanced knowledge of and/or ratified" Defendant's unlawful detentions. *Id.* at ¶ 12.

On July 24, 2019, Defendant filed a motion to dismiss Plaintiff's first, second, and third causes of action. ECF No. 12 at 3–4. On October 3, 2019, Plaintiff filed a response, and, on October 11, 2019, Defendant filed a reply. ECF Nos. 21, 22.[1] On September 25,

---

[1] On October 22, 2019, Plaintiff filed an *ex parte* application seeking permission to submit a sur-reply. ECF No. 23. Plaintiff's motion is DENIED on that grounds that (1) the Court has not provided for sur-replies in its briefing schedule, (2) the *ex parte* motion was not timely with respect to the hearing date, and (3) Plaintiff does not show good cause as to why a sur-reply is necessary to adjudicate this motion.

2019, the Court granted Plaintiff permission to engage in expedited discovery limited to learning the identities of the DOE defendants in Plaintiff's FAC. ECF No. 19 at 3-4.

## II. Factual Allegations

In the General Allegations section of the FAC, Plaintiff alleges that "[i]n each cause of action under 42 USC 1983 San Diego County is responsible for the deputies (sic) unlawful conduct under *Monell*." FAC at ¶ 23. To show the existence of a custom, policy, or pattern to establish *Monell* liability, Plaintiff relies on his prior interactions with sheriff deputies, his observations, and research. FAC at ¶ 24. According to Plaintiff, County sheriff deputies have "detained unlawfully at least 50 other citizens similar to Plaintiff in the past 5 year . . ." *Id.*

Plaintiff also describes five unlawful stops effected by officers employed by the San Diego County Sherriff's Department. FAC at ¶¶ 26–61. These stops took place on or about (1) September 28, 2012, (2) December 20, 2014, (3) April 30, 2017, (4) August 7, 2017, and (5) March 29, 2018, *see* FAC at ¶¶ 19, 21, 27, 34, 42, and incorporate the following alleged facts.

<u>First Stop.</u> At 3 a.m., on or about September 26, 2012, a San Diego sheriff patrol car approached Plaintiff as he walked along Vista California's downtown district. FAC at ¶ 19. Plaintiff was detained for several minutes before the officer drove away. FAC at ¶¶ 19–20. Plaintiff alleges the stop was conducted "without legal basis." FAC at ¶ 19.

<u>Second Stop.</u> At 8:30 p.m., on or about December 20, 2014, a San Diego County Sheriff's officer approached Plaintiff's car in Fallbrook, CA. FAC at ¶ 21. Plaintiff was sitting in his car and had recently used a coin laundry nearby. *Id.* The officer detained Plaintiff for about eight minutes. FAC at ¶ 22. A prior court found on summary judgment that, with respect to this incident, San Diego County Sheriff Deputy Jeremy Banks approached Plaintiff's car without reasonable suspicion, engaged in an unlawful frisk, and prolonged the detention for no investigatory purpose, all in violation of the Fourth Amendment. *See* ECF 59, *Raiser v. Vista, City of et al*, 14-cv-02263-CAB-WVG, at 5, 9, 10 (S.D. Cal. June 29, 2016).

3

19-cv-0751-GPC-KSC

Third Stop. At about 3 p.m., on or about April 30, 2017, two San Diego County sheriff's deputies (one of which is Doe 1)[2] approached Plaintiff as he sat in his car near Exit 51 (Mission Avenue) on California Highway 15. FAC at ¶ 27. The officers detained Plaintiff for more than ten minutes. *Id.*; *see also* FAC at pp. 10–16.

While detaining Plaintiff, "Deputy 1" informed Plaintiff that it was "suspicious" for him to be there because there is "alot (sic) of drug activity" in the area. FAC at p. 10. The Deputy accused Plaintiff of "loitering" and asked for Plaintiff's name. FAC at pp. 10–11. Plaintiff volunteered his identification card. *Id.* When asked what he was doing in the area, Plaintiff informed the officer, "I'm just looking for someplace to hang out. Do some work." FAC at p. 11. Deputy 1 then explained he "want[ed] to make sure the car [was] not stolen." FAC at p. 12. Plaintiff asked the officer multiple times to conduct a background check and let him go. FAC at pp. 10-13. Eventually, Deputy 1 walked away from Plaintiff and his car, telling him to "hang tight for just a minute." FAC at p. 13.

As Plaintiff waited, a second officer, "Deputy 2," engaged Plaintiff in a conversation. FAC at pp. 13–15. After approximately three minutes according to the transcript's time stamps, Deputy 1 returned. FAC at p. 15. Deputy 1 informed Plaintiff that he approached Plaintiff to "see what [he was] up to" because "people . . . do drugs and steal avocados" in the area. *Id.* Deputy 1 also told Plaintiff that this was "not a rest area." *Id.* The officers subsequently left Plaintiff without issuing a ticket or arresting him. *Id.* Plaintiff alleges that the officers had no basis to approach his car and excessively prolonged his detention. FAC at ¶ 27.

Fourth Stop. At about 10 a.m., on or about August 7, 2017, a San Diego county sheriff deputy (Doe 2) stopped Plaintiff as he was preparing to turn left onto California Highway 15. FAC at ¶¶ 34–35. Doe 2 "activated his flashing police lights and detained Plaintiff saying someone in the area . . . complained about Plaintiff not belonging in the

---

[2] It is not clear from Plaintiff's amended complaint which of the two deputies involved in the April 30, 2017 stop is Officer Doe 1.

area." FAC at ¶ 35. Plaintiff was detained for eleven minutes and alleges that the officers has no legal basis to do so. FAC ¶¶ 35–36.

Before being pulled over, Plaintiff alleges that he had driven along a two-mile street lined with intermittent houses and avocado orchards in the hopes of finding a good place to hike while the traffic on highway 15 diminished. FAC at ¶ 34. Plaintiff returned to the highway after failing to find a place to hike. FAC at ¶ 35.

<u>Fifth Stop.</u> On or about March 29, 2018, another San Diego county sheriff officer (Doe 3) pulled up behind Plaintiff's car parked off California Highway 15, approached the car on foot, and said to Plaintiff, "Don't go anywhere." FAC at ¶ 42; *see also* FAC at pp. 17–19. Officer Doe 3 stood outside Plaintiff's car door and detained Plaintiff for two minutes. FAC at ¶¶ 44, 51, 52. Officer Doe 3 repeated that Plaintiff could not leave and informed Plaintiff that he was making sure Plaintiff's car wasn't stolen. FAC at pp. 17–18. Plaintiff then showed the officer his ID, confirmed his date of birth, and asked the officer to run a background check so that he could be on his way. FAC at pp. 17–18. Shortly thereafter, the Officer let Plaintiff leave. FAC at p. 18. During this interaction, Plaintiff felt he was not "free to go about his business." FAC at ¶ 42.

Plaintiff alleges that the Doe 3 detained him without a legal basis. FAC at ¶ 43. Plaintiff further alleges that the officer "made threats of violence" which led Plaintiff to think the officer might react violently if Plaintiff disobeyed him. FAC at ¶ 58.

## III. Legal Standards

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may seek to dismiss a complaint for lack of jurisdiction over the subject matter. The federal court is one of limited jurisdiction. *See Gould v. Mutual Life Ins. Co. v. New York*, 790 F.2d 769, 774 (9th Cir. 1986). As such, it cannot reach the merits of any dispute until it confirms its own subject matter jurisdiction. *See Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 95 (1998). Plaintiff, as the party seeking to invoke jurisdiction, has the burden of establishing that jurisdiction exists. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

5

A Rule 12(b)(6) motion compels the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Consequently, while "detailed factual allegations" are unnecessary, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

The Court must accept all factual allegations in the complaint as true and must draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). However, "to be entitled to the presumption of truth, allegations in a complaint . . . must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court need not presume the validity of any "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quotations omitted).

**IV. Analysis**

    **a. Threshold Issues**

        **i. The FAC Properly Incorporates Plaintiff's Transcripts.**

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment," Fed. R. Civ. P. 12, unless the complaint incorporates such documents by reference. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). This doctrine applies if the complaint "refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342

F3d 903, 907 (9th Cir. 2003). The "mere mention of the existence of a document" is insufficient to justify incorporation. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The document's authenticity, moreover, must not be in question and there must be no disputed issues as to the document's relevance. *Coto Settlement*, 593 F.3d at 1038). The Court "may assume [an incorporated document's] contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (quotations omitted).

Here, the transcripts attached to Plaintiff's complaint appear relevant, authentic, and undisputed. The transcripts are relevant in that they were transcribed from Plaintiff's recordings of the April 2017 and March 2018 detentions. FAC at ¶¶ 27, 44. Also, the transcripts are not "redacted, disorganized, [or] unclear," *Cederberg v. Washington Cty. Consol. Commc'ns Agency*, No. 3:18-CV-02044-HZ, 2019 WL 2929505, at *5 (D. Or. July 8, 2019). Any recording gaps, moreover, are explained by an uncontested assertion that Plaintiff was replacing the "batteries into the recorder" at the time. FAC at p. 16.

As Plaintiff only refers to each transcript once, FAC at ¶¶ 27, 44, the Court accepts Plaintiff's transcripts under the reasoning that they "form[] the basis of the plaintiff's claim." Plaintiff's transcripts replicate on paper two of the alleged detentions and are thus "integral" to this litigation. *See Coto Settlement*, 593 F.3d at 1038. The transcripts are especially relevant in that they provide nearly a "full record" of the detentions. *Epps v. Earth Fare, Inc.*, No. CV-16-08221-SJO-SSX, 2017 WL 1424637, at *2 (C.D. Cal. Feb. 27, 2017). Thus, the Court finds that Plaintiff's FAC incorporates the two transcripts. FAC at pp. 10–19.

### ii. The Court Judicially Notices Case Number 14-cv-02263.

Courts may also consider documents extraneous to the complaint at the motion to dismiss stage if they are "matters of public record." *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). With respect to judicial decisions, this rule permits courts to take "judicial notice of another court's opinion . . . for the existence of the opinion," but not for "the truth of the facts recited therein." *Lee v. Cty. of Los Angeles*, 250 F.3d

7

668, 689 (9th Cir. 2001) (quotations omitted). A court may not take notice of facts that are "subject to reasonable dispute." *Id.* (quoting Fed. R. Evid. 201(b)).

Here, Plaintiff requests that the Court take judicial notice of a summary judgment order from one of his prior cases. *See* ECF No. 21 at 3. Applying *Lee*, the Court takes judicial notice that this case existed and that it pertained to Plaintiff's 2014 allegation. The Court also takes judicial notice that the prior court found, on summary judgment, that the officer approached Plaintiff's car without reasonable suspicion, engaged in an unlawful frisk, and prolonged the detention for no investigatory purpose, all in violation of the Fourth Amendment. *See* ECF 59, *Raiser v. Vista, City of et al*, 14-cv-02263-CAB-WVG, at 5, 9, 10 (S.D. Cal. June 29, 2016). The Court does not take judicial notice of any factual findings or legal conclusions in the order. *Lee*, 250 F.3d at 689; *Taylor v. Charter Medical Corp.*, 162 F.3d 827, 829–31 (5th Cir. 1998).

### b. Plaintiff Has Not Adequately Pled a *Monell* Claim.

As a general matter, a municipality may become "liable for an injury under § 1983 under three possible theories." *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018). First, a defendant can be found liable if a municipality's "policy or custom" becomes the "moving force" for a "constitutional violation" injuring the plaintiff. *Monell*, 436 U.S. at 694. Second, a municipality can incur *Monell* liability by acting "in a manner that amounts to 'deliberate indifference' to a constitutional right," including through a failure to adequately train or supervise its employees. *Rodriguez*, 891 F.3d at 802 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Third, a municipality may also be liable if the tortfeasor "was an official with final policy-making authority or such an official ratified a subordinate [tortfeasor's] unconstitutional decision or action and the basis for it." *Id.* at 802-03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)). Courts consider each type of *Monell* claim separately as they involve different requirements. *See, e.g.*, *Dizon v. City of S. San Francisco*, No. 18-CV-03733-JST, 2018 WL 5023354, at *3 (N.D. Cal. Oct. 16, 2018) (separately analyzing two *Monell* claims alleging failure-to-train and ratification theories); *Knighten v. City of*

*Anderson*, No. 215-CV-01751-TLN-CMK, 2016 WL 1268114, at *5 (E.D. Cal. Mar. 31, 2016) (considering three distinct *Monell* claims for (a) adopting a custom or policy, (b) failing to train, hire, and supervise, and (c) ratification).

The Court finds that Plaintiff's FAC does not adequately allege a claim for relief against Defendant for three reasons. First, § 1983 claims cannot proceed under *respondeat superior* as a matter of law. Second, as to *Monell* liability, Plaintiff has failed to sufficiently allege that Defendant had constructive notice of a pattern, practice or custom of unlawful detentions by deputy sheriffs and he has not sufficiently pled causation. Third, Plaintiff has not plausibly alleged a failure-to-train or ratification claim.

### i. Plaintiff Impermissibly Relies on a Theory of Vicarious Liability

In § 1983 suits, municipalities cannot be held vicariously liable under a theory of *respondeat superior*. *See Monell*, 436 U.S. 691. In other words, a municipality is not liable "solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997). This limitation stems from the "language of § 1983 itself," which "cannot be easily read to impose liability vicariously." *Id.* (quotations omitted). Likewise, the legislative history of § 1983 counsels against a permissive policy of vicarious liability. *See Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986).

Here, Plaintiff "invoke[s] vicarious liability and respondeat superior liability." FAC at ¶ 9. Because Defendant cannot be liable under a theory of *respondeat superior* in a § 1983 suit, it cannot support Plaintiff's first, second, and third causes of action.

### ii. Plaintiff Does Not Adequately Allege a Policy or Custom.

In his response papers, Plaintiff argues that, even if the Court finds for Defendant as to their *respondeat superior* argument, the FAC survives because it properly alleges a *Monell* claim under a "policy or custom" theory of liability. FAC at 3. Plaintiff's claim is not adequately pled because it fails to allege sufficient facts as to notice of a pattern of constitutional violations and as to causation.

A "plaintiff seeking to impose liability on a municipality under § 1983" is required "to identify a municipal policy or custom that caused the plaintiff's injury." *Hunter v.*

9

*Cnty. of Sacramento*, 652 F.3d 1225, 1232–33 (9th Cir. 2011) (citations and quotation marks omitted). A policy is "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002).

A custom, on the other hand, is an act "that has not been formally approved by an appropriate decisionmaker" but may nonetheless "fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (quotations omitted). Liability for custom claims "may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001). Though it is unclear from "the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and practice claim," *Gonzalez v. Cty. of Merced*, 289 F. Supp. 3d 1094, 1099 (E.D. Cal. 2017), "where more than a few incidents are alleged, the determination appears to require a fully-developed factual record." *Lemus v. Cty. of Merced*, No. 115-CV-00359-MCE-EPG, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 F. App'x 859 (9th Cir. 2017).

In addition to identifying a policy or custom, *Monell* requires that the Plaintiff establish a "causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). "This inquiry has been described as a difficult one." *See Koistra v. Cty. of San Diego*, 310 F. Supp. 3d 1066, 1086 (S.D. Cal. 2018) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385–86 (1989)). The alleged policy or custom must be the "moving force behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

*Monell* also requires that the conduct of the municipal employees have resulted in "a constitutional tort" or injury. *Monell*, 436 U.S. at 691. A person is seized "if, in view

of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *U.S. v. Mendenhall*, 446 U.S. 544, 553–54 (1980). A seizure requires, at a minimum, reasonable suspicion, *United States v. Woods*, 720 F.2d 1022, 1026 (9th Cir. 1983), which entails "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

Here, Plaintiff alleges that, on multiple incidents, various San Diego sheriff's deputies pulled him over, or detained him while he sat in his parked car, for multiple minutes without cause. FAC at ¶¶ 19, 21–22, 27, 34–35, 42–45. If true, Plaintiff's allegations sufficiently plead a claim of unlawful detention. *See Alston v. Cty. of Sacramento*, No. CIVS-11-2281-GEB-GGH, 2012 WL 2839825, at *10 (E.D. Cal. July 10, 2012), *report and recommendation adopted*, No. 2:11-CV-2281-GEB-GGH, 2012 WL 3205142 (E.D. Cal. Aug. 3, 2012) (finding Plaintiff's allegation of an unlawful car stop was sufficient on a motion to dismiss where she was allegedly "sitting in her vehicle at the park reading a book and did nothing wrong").

As to a widespread custom, however, Plaintiff's claims are lacking. Plaintiff argues that the five instances to which he cites evince a custom of "unlawfully detaining citizens without legal basis to ID them." ECF No. 21 at 6–7 (quoting *Ferrari v. Cty. of Suffolk*, 790 F. Supp. 2d 34, 45–46 (2011)) (requiring only three instances to sustain a custom). The Court, however, is not persuaded that two instances in the five years preceding the events which form the basis of Plaintiff's § 1983 claims would provide constructive notice of a pattern of unconstitutional conduct. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (reversing district court's dismissal of complaint as it properly alleged a *Monell* custom by relying on "numerous incidents" and "several reports"); *deLeon v. City of Vista*, No. 18-CV-714-JM-BGS, 2019 WL 969544, at *4 (S.D. Cal. Feb. 28, 2019) ("Of the approximately 15,000 annual contacts between the citizenry and County and City's deputies, Plaintiffs cite only a few incidents of alleged excessive force. Such allegations do not reasonably establish either a custom, practice, or policy . . .").

Plaintiff also makes the observation that there have been 50 other similar incidents in the last five years. FAC at ¶ 28. Without additional facts, this cursory claim cannot sustain a pattern or practice under *Monell*. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (noting that a court need not take "unwarranted deductions of fact" as true on a motion to dismiss); *Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1096 (E.D. Cal. 2012) (finding plaintiff's analogous, bald accusation that defendant demolished many homeless encampments "lack[ed] the specificity required to" allege a plausible claim of widespread conduct).

Lastly, Plaintiff's complaint does not contain an allegation of the causal connection between the Defendant's alleged policy and the constitutional torts caused by its employees. *See Brown*, 520 U.S. at 404. Plaintiff's complaint describes five distinct incidents, three of which form the basis for Plaintiff's § 1983 claims. Though Plaintiff alludes to Defendant's role in his response papers, Plaintiff does not articulate in the complaint that the two prior incidents fairly placed "San Diego County Sheriff and San Diego County . . . on full notice that their deputies were not properly trained and/or were unlawfully violating citizens (sic) rights as determined by a federal judge." ECF No. 21 at 5. Thus, Plaintiff does not state facts suggesting Defendant County – as opposed to the officers alone – was responsible for his injury. *Soares v. Dumanis*, No. 3:17-CV-2478-CAB-RBB, 2018 WL 1010563, at *4 (S.D. Cal. Feb. 21, 2018).

### iii. Plaintiff Does Not Allege Failure-to-Train or Ratification Claims.

In his opposition, Plaintiff also argues that Defendant is liable for failing to adequately train its deputies and because the Sheriff ratified his officers' misconduct. ECF No. 21 at 3–5.

Here, FRCP 12(b)(6) rules out Plaintiff's reliance on a failure-to-train claim. Plaintiff's FAC makes no reference whatsoever to training and a court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Likewise, Plaintiff does not allege a ratification claim. Plaintiff is correct in recognizing that it is possible for a sheriff or a sheriff's department to be a policymaker. *See, e.g.*, *United States v. Cty. of Maricopa, Arizona*, 889 F.3d 648, 650 (9th Cir. 2018), *cert. denied sub nom. Maricopa Cty., Ariz. v. United States*, 139 S. Ct. 1373 (2019); *Streit v. Cty. of Los Angeles*, 236 F.3d 552, 564–65 (9th Cir. 2001). Nonetheless, Plaintiff makes no factual allegations to support his assertion of ratification, FAC at ¶ 12, including whether, or how, the Sheriff "approved [his] subordinate's decision[s] and the basis for" their alleged misconduct. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *see also Ayala v. Cty. of Imperial*, No. 15-CV-397-LAB-NLS, 2017 WL 469016, at *6 (S.D. Cal. Feb. 3, 2017) (dismissing Monell claim containing "naked assertions without any *factual* enhancement") (emphasis in original). Consequently, Plaintiff's complaint cannot pass muster under FRCP 12(b)(6) under failure-to-train or ratification theories.

### c. Defendant's Jurisdictional Argument is Moot.

Defendant also moves to dismiss Plaintiff's § 1983 claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1). FAC at 3–4. As a threshold assessment, Plaintiff's § 1983 claims are predicated on a violation of the Fourth Amendment and thus would plainly provide for subject-matter jurisdiction were they valid claims. *Coeur d'Alene Tribe v. Hawks*, 933 F.3d 1052, 1055 (9th Cir. 2019). However, as the Court dismisses these claims pursuant to FRCP 12(b)(6), the Court need not consider Plaintiff's jurisdictional argument further and finds it moot. *See Ferris v. City of San Jose*, No. 11-CV-01752-LHK, 2011 WL 5574896, at *11 (N.D. Cal. Nov. 16, 2011) (entertaining concurrent 12(b)(1) and 12(b)(6) motions on *Monell* claims and ruling only with respect the latter)

### d. The Court Grants Leave to Amend the FAC.

Lastly, the Court GRANTS Plaintiff leave to amend the complaint. The Court finds that Plaintiff's argument could "possibly be cured by the allegation of other facts." *Jones v. Allie*, No. 13-CV-0104-IEG-JMA, 2013 WL 1339607, at *1 (S.D. Cal. Apr. 3, 2013) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130–31 (9th Cir. 2000)).

## V. Conclusion

The Court has considered here various questions raised by the parties' papers. In light of the foregoing reasons, the Court (1) **GRANTS** Defendant's motion to dismiss Plaintiff's first, second, and third causes of action and (2) **PERMITS** Plaintiff leave to file a second amended complaint. Defendant's jurisdictional argument is moot.

**IT IS SO ORDERED.**

Dated: October 25, 2019

Hon. Gonzalo P. Curiel
United States District Judge