UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RAISER,<br><br>                    Plaintiff,<br><br>v.<br><br>SAN DIEGO COUNTY, et al.,<br><br>                    Defendants. | Case No.:  19-cv-0751-GPC-KSC<br><br>**ORDER:**<br><br>**(1) OVERRULING PLAINTIFF'S OPPOSITIONS TO THE MAGISTRATE JUDGE'S ORDER; AND**<br><br>**(2) ADOPTING THE REPORT AND RECOMMENDATION**<br><br>**[ECF Nos. 101, 112, 128, 131]** |

## I.    INTRODUCTION

On January 13, 2021, Magistrate Judge Karen S. Crawford issued (1) an Order denying Plaintiff's request for additional time to comply with the Magistrate Judge's Chambers Rule VIII.A, and for monetary sanctions against Defendants; and (2) a Report and Recommendation ("R&R") recommending that this Court deny Plaintiff's request for default judgment (referenced in Plaintiff's underlying documents as "terminating

1

sanctions") against Defendants.[1]  ECF No. 112.  Plaintiff challenged these decisions in two Oppositions, in which the later document amends the former.  *See* ECF Nos. 128, 131.  Upon considering the moving papers and the record of the case, the Court **OVERRULES** Plaintiff's Oppositions and **ADOPTS** in full the R&R.

## II.  RELEVANT BACKGROUND

At the center of this dispute is Plaintiff's desire to conduct depositions without a court reporter reasoning that a public notary would suffice.  Defendants did not agree to such arrangements and declined to attend the depositions that Plaintiff scheduled without a court reporter.  Eventually, Plaintiff sought sanctions for Defendants' failure to attend the depositions.  Accordingly, a detailed description of the procedural history is provided.

### A.  Plaintiff's Initial Deposition Requests

On August 13, 2020, at 6:30 PM and 6:39 PM, Plaintiff sent two emails to Defendants' counsel concerning depositions.  The emails asked if Defendants agreed to (1) conduct depositions via Zoom, and (2) have the deposition "be taken before any person."  *See* ECF No. 70-1 at 35–38.[2]

The next day, before Defendants had an opportunity to respond to Plaintiff's email and before the Parties met and conferred,[3] *see id.* at 5, 40, Plaintiff filed an Ex Parte

---

[1] Hereinafter, the Court replaces the phrase "terminating sanctions" with "default judgment."  *See* Fed. R. Civ. P. 37(b)(2)(A)(vi).  This is to avoid the potential confusion of interpreting "terminating sanctions" to mean "terminating existing sanctions," although the Court is aware that "terminating sanctions" is a term used as well.

[2] References to specific page numbers in a document filed in this case correspond to the page numbers assigned by the Court's Electronic Case Filing ("ECF") system.

[3] Indeed, the Court observes that the docket entry was made at 4:27 PM, *see* ECF No. 68, which means that Plaintiff gave Defendants less than 24 hours to respond, not even accounting for the fact that Plaintiff sent the emails after typical business hours.  *See also* ECF No. 70 at 10.

2

Application.  ECF No. 68.  The Ex Parte Application, in part, asked for: (1) depositions via Zoom, (2) "record[ing] the depositions using Zoom and then to have them transcribed later if needed," and (3) "'any person' be the deposition officer."  *See* ECF No. 68-1 at 11–12.

Responding to Plaintiff's Ex Parte Application, Defendants filed an Opposition on August 19, 2020.  ECF No. 70.  As part of the Opposition, Defendants discussed how Plaintiff's Ex Parte Application was procedurally improper, including Plaintiff's failure to meaningfully engage in meet-and-confer communications.  *Cf.* Magistrate Judge Crawford Chambers Rule VIII.A; CivLR 26.1.  And while Defendants did not oppose conducting depositions via Zoom, they stated they do not waive the protections provided under Federal Rule of Civil Procedure ("FRCP") 30 to have a deposition officer present.  Defendants raised a host of concerns, such as: (1) how the deposition officer must conduct the recording of the deposition and not be a party to the lawsuit, (2) whether Plaintiff can adequately and reliably record his questioning, especially given Plaintiff's internet connection issues, (3) admissibility concerns unless a stenographic transcript is created, and (4) how Plaintiff will almost certainly need to hire an individual to create a transcript of any recording of the deposition.  *See* ECF No. 70 at 10–11.

On September 2, 2020, Plaintiff made a similar request in another Ex Parte Application (among many other Ex Parte Applications filed in the process).  ECF No. 78.  Here, Plaintiff requested that he himself be the deposition officer.  Defendants immediately filed an Opposition, once again discussing the need for FRCP 30 protections, such as a third-party officer, a certified deposition transcript, and the officer administering oaths.  *See* ECF No. 79.

## B.    Plaintiff's First Deposition Notice

While the Magistrate Judge's ruling on Plaintiff's Ex Parte Applications was pending, the Parties also corresponded with each other regarding deposition dates.  *See*

19-cv-0751-GPC-KSC

ECF No. 101 at 4.  Eventually Plaintiff sent Defendants the deposition notices.  The notices were signed by Plaintiff on August 26, 2020, and informed Defendants that the depositions will take place on September 10, 2020.  *See* ECF No. 101-3.  On August 27, 2020, Defendants' counsel via email acknowledged receipt, but asked "who the [deposition] officer is, who will be responsible for recording the deposition, and if [Plaintiff] hired a court reporter."  ECF No. 101 at 4.

No part of the record indicates that Plaintiff replied to the counsel's August 27, 2020 email.  Instead, on September 9, 2020, Plaintiff emailed Defendants' counsel that "depositions are on for tomorrow" since Plaintiff had hired a "California notary."  *See id.* at 5.  Counsel replied the same day that the presence of a notary would merely solve the issue regarding an appropriate oath administrator, still failing to address the other concerns Defendants raised in their Oppositions.  Counsel also expressed to Plaintiff that it would be best to wait for the Magistrate Judge to issue rulings on Plaintiff's other pending Ex Parte Applications, and that Defendants would not appear at the September 10, 2020 deposition absent a court order.  *See id.*  About an hour later, Plaintiff disclosed the name of the deposition officer, and stated that she can record the deposition and that no rules prohibit Plaintiff or anyone from making the transcript.  *See id.* at 7.  While Plaintiff also asked Defendants' counsel if they can contact the Magistrate Judge concerning the matter, the counsel informed he was disinclined to do so.  This was because according to the counsel, Plaintiff had already filed briefings that "directly raise the issues we'd call about," and the Magistrate Judge's Chambers Rules do not allow for a same-day conference.  *See id.*

## C.    The Magistrate Judge's Order on Depositions

On October 5, 2020, the Magistrate Judge issued an Order concerning the various Ex Parte Applications that Plaintiff filed, including the ones concerning Plaintiff's requests to conduct depositions in the way discussed above.  Specifically, the Magistrate

4

Judge denied "Plaintiff's request to conduct depositions without an independent, qualified deposition officer who meets the requirements of Rule 30 of the Federal Rules of Civil Procedure." ECF No. 87 at 8.

### D. Plaintiff's Second Deposition Notice

On October 12, 2020, Plaintiff reached out to Defendants' counsel regarding potential deposition dates. *See* ECF No. 101 at 5. Defendants' counsel replied back, once again asking whether Plaintiff hired a court reporter, and asking how Plaintiff plans on taking depositions given Plaintiff's affirmative representations to the Court that he will not need them. *See id.* at 6. Plaintiff responded: "same plans as the last depo notices." *Id.* When Defendants' counsel asked if that would mean using the same notary, recording the depositions via Zoom, and then creating the transcript later, Plaintiff answered there is no reason the notary cannot conduct the oaths "and other housekeeping items," record the deposition, "and then get a transcript from there." Plaintiff further stated "there is nothing that prohibits me from doing the transcript and then [Defendants] reviewing it alongside the video which they can make or have." *Id.*

Signed October 14 and 15, 2020, Plaintiff sent Defendants deposition notices, one to be held on October 30, 2020, and another on November 17, 2020. *See* ECF Nos. 101-4, 101-5. And on October 26, 2020, Defendants' counsel emailed Plaintiff that the depositions are not proper in light of the Magistrate Judge's decisions, thus informing Plaintiff that Defendants would not appear for the depositions. *See* ECF No. 101 at 6–7.

### E. Plaintiff's Subsequent Ex Parte Applications

Magistrate Judge Crawford's Chambers Rule VIII.A requires parties to "meet and confer" before filing any discovery motion. *See also* CivLR 26.1 (requiring conference and a certificate of compliance thereof). On November 25, 2020, Plaintiff filed an Ex Parte Application for an extension to comply with the meet and confer requirement. *See* ECF No. 100. Then, on November 30, 2020, based upon Defendants' failure to attend

the scheduled depositions, Plaintiff filed his Ex Parte Application for an order "To Allow Direct Briefing on Sanctions for Non-Appearance At Depositions."  ECF No. 101-1.  The application moved for sanctions primarily under FRCP 37 and sought permission to bypass any meet and confer requirements.  *See id.* at 1.

Magistrate Judge Crawford denied both Ex Parte Applications on January 13, 2021.  *See* ECF No. 112.  As part of the decision, the Magistrate Judge found that the FRCP 37 sanctions issue could be addressed without requiring additional briefing, because Plaintiff's November 30, 2020 Memorandum already argued the basis for sanctions, and Defendants filed an Opposition brief addressing the FRCP 37 sanctions. *See id.* at 2–3.  Accordingly, the Magistrate Judge denied Plaintiff's Ex Parte Applications "to the extent it seeks an order from the Court compelling defendants to appear for depositions and/or an order from the Court awarding monetary sanctions against defendants for declining to appear for noticed depositions."  *Id.* at 13.  Relatedly, the Magistrate Judge recommended that this Court deny Plaintiff's request for default judgment.  *Id.*  Plaintiff filed an Opposition, then an Amended Opposition.  *See* ECF Nos. 128, 131.

## III.    STANDARD OF REVIEW

The Magistrate Judge's authority and this Court's corresponding standard of review over her decision(s) differs based on whether the Magistrate Judge's decision on the matter would be dispositive versus non-dispositive.  Here, the Magistrate Judge's January 13, 2021 Order has both dispositive and non-dispositive elements.  This is because while discovery issues are generally considered non-dispositive, *see, e.g.*, *Cervantes v. San Diego Police Chief Shelley Zimmerman*, No. 17-CV-1230-BAS-NLS, 2019 WL 3072307, at *2 (S.D. Cal. July 15, 2019) (citing *Maisonville v. F2 America, Inc.*, 902 F.2d 746, 748 (9th Cir. 1996)), Plaintiff also seeks default judgment as the

/ / /

sanctions remedy, which if granted would dispose the entire case. Thus, the Court discusses the standard of review for both.

## A. Dispositive Issues

If a matter would dispose of a claim or defense of a party, the magistrate judge must issue an R&R instead of an order, and the district court must review the R&R de novo. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015) (citation omitted). At the same time, the objection to the R&R must identify which specific portion of the R&R the party objects to. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those *portions* of the report or *specified* proposed findings or recommendations to which objection is made." (emphases added)); *Ali v. Grounds*, 236 F. Supp. 3d 1241, 1249 (S.D. Cal. 2017) ("Only objections that reference specific portions of the report and recommendation will trigger de novo review—general or conclusory objections do not suffice."), *aff'd*, 772 F. App'x 580 (9th Cir. 2019).

## B. Non-Dispositive Issues

In contrast, if the matter is not dispositive, the magistrate judge may decide the matter on her own and "issue a written order stating the decision." *See* Fed. R. Civ. P. 72(a). The district court reviews whether the decision is "clearly erroneous or is contrary to law." *See id.* "The 'clearly erroneous' standard applies to factual findings and discretionary decisions made in connection with non-dispositive pretrial discovery matters." *FDIC v. Fid. & Deposit Co. of Maryland*, 196 F.R.D. 375, 378 (S.D. Cal. 2000) (citations omitted); *see also McAdam v. State Nat. Ins. Co.*, 15 F. Supp. 3d 1009, 1013 (S.D. Cal. 2014) (discussing how this standard is "significantly deferential, requiring 'a definite and firm conviction that a mistake has been committed.'"). The "contrary to law" standard "permits independent review of purely legal determinations by the magistrate judge." *FDIC*, 196 F.R.D. at 378 (citations omitted).

The district court reviews the non-dispositive decision "under a far more deferential standard," one that is "clearly intended [to make the decision] final unless a judge of the court exercises his ultimate authority to reconsider the magistrate's determination." *See United States v. Abonce-Barrera*, 257 F.3d 959, 968–69 (9th Cir. 2001). And similar to the discussion *supra* Section III.A, the objection must articulate which specific part of the non-dispositive order the party protests. *See* Fed. R. Civ. P. 72(a) (discussing how the district court must "consider timely objections and modify or set aside *any part of the order* that is clearly erroneous or is contrary to law" (emphases added)); *cf. Jang v. Sagicor Life Ins. Co.*, No. EDCV171563JGBKKX, 2019 WL 988690, at *2 (C.D. Cal. Jan. 25, 2019) (requiring the objecting party to "designat[e] the specific portions of the ruling objected to"); *Somers v. Digital Realty Tr. Inc.*, No. 14-CV-05180-EMC, 2017 WL 3602479, at *2 (N.D. Cal. Aug. 22, 2017) (rejecting plaintiff's objections because he "utterly failed to specify the basis for his objections").

## IV. DISCUSSION

With the standard of review in mind, this Court finds no basis to overturn the Magistrate Judge's January 13, 2021 Order. As an initial matter, the Court does not entertain Plaintiff's blanket statement that he "objects to any and all findings of fact found in ECF 112," or that he "raises many other issues of fact and law," ECF No. 131 at 1, 15, for reasons discussed *supra* pages 7–8 of this Order. *Cf. Morris v. Barra*, No. 10CV02642 AJB BGS, 2012 WL 5928144, at *2 (S.D. Cal. Nov. 26, 2012) ("Plaintiff's broad objection to the entirety of [the Magistrate Judge's] order is overruled.").

Before navigating Plaintiff's thicket of contentions, the Court clarifies what precise dispute is in front of the Court. The Court is reviewing whether the Magistrate Judge was wrong: (1) to deny an extension of time to meet and confer before filing any FRCP 37 sanctions motion, (2) to deny "briefing" on the merits of sanctions, (3) to deny monetary sanctions against Defendants, and (4) to deny default judgment against Defendants. Only

8

the last issue undergoes de novo review.  For the rest, Plaintiff must show how the Magistrate Judge's decision was clearly erroneous or contrary to law.  The Court analyzes each.

A.    **Denial of "Extension" of Time**

The Ex Parte Application filed on November 25, 2020 requested an "extension" to comply with the meet and confer requirements before filing any FRCP 37 sanctions motions.  *See* ECF No. 100.  The Magistrate Judge denied this Ex Parte Application for two main reasons.  First, this Application itself did not comply with the meet and confer requirements.  Second, any extension would be "futile" since the meet and confer requirement is intended to resolve a dispute informally without the need for briefing, and the Parties had already briefed the FRCP 37 issue by the time the Ex Parte Application was ruled on.  *See* ECF No. 112 at 2.

To be clear, the November 25, 2020 was in violation of Magistrate Judge Crawford's Chamber Rules.  *Compare* Magistrate Judge Crawford Chambers Rule VIII.A (requiring "telephone or video conference"), *and* CivLR 26.1.a ("The court will entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel will have previously met and conferred concerning all disputed issues.  Under no circumstances may the parties satisfy the meet and confer requirement by exchanging written correspondence."), *with* ECF No. 100 at 1 ("Plaintiff met and conferred about this ex parte via email . . . .").  And since the Court agrees that the Parties effectively briefed the issue, Magistrate Judge Crawford's decision was neither in clear error nor contrary to law.

B.    **Denial of Direct Briefing**

Similar to the reasoning above, the Magistrate Judge rejected the Ex Parte Application filed on November 30, 2020, ECF No. 101, which requested a direct briefing on the sanctions issue without first undergoing a meet and confer.  The Magistrate Judge

concluded that the Parties effectively already briefed the issue based on their filings. *See* ECF No. 112 at 2–3.

Plaintiff objects to the Magistrate Judge's conclusion that "plaintiff has already briefed and filed his Rule 37 motion." *See* ECF No. 131 at 2. Yet Plaintiff presents no argument as to how the "actual" brief will be any different from what he presented in his memorandum, *see* ECF No. 101-1, as all he says is "Plaintiff attempted to set forth the issues for the R. 37 motion for sanctions." ECF No. 131 at 2. That "attempt" in fact fully briefed the FRCP 37 issue. *See* ECF No. 101-1 at 10–16. In addition, for reasons discussed *infra* Sections IV.C and D, no viable sanctions claim exists to begin with. Therefore, the Magistrate Judge's decision to deny any further briefing was not in clear error or contrary to law.

Relatedly, while Plaintiff alleges that the Magistrate Judge did not consider Plaintiff's Reply brief concerning his November 30, 2020 Ex Parte Application, *see* ECF No. 131 at 2, this allegation is also not a valid basis to overturn the Magistrate Judge's decision. The Magistrate Judge's decision was filed on January 13, 2021. ECF No. 131. And in her decision, the Magistrate Judge stated that she reviewed "the record," *id.* at 3, which implicitly includes every filing occurred before the Order, including Plaintiff's Notice of Intent to File Reply (filed December 7, 2020), ECF No. 104, and the Reply (filed December 11, 2020), ECF No. 108. The Magistrate Judge is under no obligation to explicitly reference a reply brief, and Plaintiff does not provide any authority to argue otherwise. Other than pinpointing a passage where the Magistrate Judge emphasizes the two main documents, Plaintiff has no other basis to support his allegation.

But more importantly, even if the Magistrate Judge decided not to consider Plaintiff's Reply brief, that was in her purview to do so under her Chambers Rules. *See* Magistrate Judge Crawford Chambers Rule X ("Unless otherwise directed by the Court, a decision will be issued in most cases without a hearing or reply."); *cf.* Judge Curiel

10

Chambers Rule 2 ("The Court may rule upon ex parte motions without requiring a response from the opposing party."). In sum, the Magistrate Judge's decision to forego any additional briefing was efficient case management that the Court upholds.

## C. Denial of Monetary Sanctions

Based on what was in front of her, the Magistrate Judge concluded that monetary sanctions against Defendants was unwarranted, regardless of any "direct" briefing that Plaintiff requested. The bulk of Plaintiff's opposition stems from his insistence that his scheduled depositions were procedurally valid. *See* ECF No. 131 at 4–14. But important to note upfront, whether Plaintiff's proposed depositions were procedurally adequate (which they were not, as explained *infra* Section IV.C.1) is a separate issue from whether the Court must issue sanctions against Defendants.

FRCP 37 governs sanctions for failure to cooperate in discovery, including non-attendance for scheduled depositions. On motion,[4] a court may order sanctions if a party fails to appear for deposition after proper notice. Fed. R. Civ. P. 37(d)(1)(A). Such sanctions may include reasonable expenses or even default judgment, "unless the failure was substantially justified or other circumstances make an award of expenses unjust." *See* Fed. R. Civ. P. 37(d)(1)(3) (cross-referencing FRCP 37(b)(2)(A)(i) to (vi), which lists the available sanctions options).

/ / /

---

[4] Such motion may be filed without an order compelling discovery. *See generally* James M. Wagstaffe, *Federal Civil Procedure Before Trial* § 11:2402 (2017) (citing Fed. R. Civ. P. 37(d); *Hilao v. Estate of Marcos*, 103 F.3d 762, 764-765 (9th Cir. 1996)). However, the motion must still be accompanied by "a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action." Fed. R. Civ. P. 37(d)(1)(B). No part of the record indicates that Plaintiff filed such certification in seeking FRCP 37 sanctions (or planned on doing so). *See* ECF Nos. 100, 101.

Applying the standard for issuing sanctions, the Court defers to the Magistrate Judge's decision that Defendants' refusal to attend the scheduled depositions was, in fact, substantially justified, and that the circumstances would make any award of expenses against Defendants unjust. Plaintiff's proposed method of deposition was not procedurally sound. Given that the Magistrate Judge was deciding on the very dispute of whether Plaintiff's proposed deposition method was appropriate, Defendants not attending the first set of noticed depositions was warranted. And once the Magistrate Judge issued an Order directing Plaintiff to comply with the protections provided under FRCP 30, Plaintiff's second set of noticed depositions to proceed with the "same plans as the last depo notices," ECF No. 101 at 6, similarly warranted non-attendance.

### 1. Procedural Safeguards for Depositions

Plaintiff questions why a court reporter would be necessary when a public notary could administer the oath, record the deposition conducted over Zoom, and keep a copy of the deposition recording to properly authenticate the deposition. *See, e.g.*, ECF No. 131 at 5, 9. And as to the transcript of the deposition, Plaintiff sees no reason why he could not prepare the transcript himself based on the recording. *See, e.g.*, *id.* at 8, 12–14.

FRCP 30 sets the parameters on what would be considered a legitimate deposition. "The parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means." Fed. R. Civ. P. 30(b)(4). "Unless the parties stipulate otherwise, a deposition must be conducted before an officer appointed or designated under Rule 28." Fed. R. Civ. P. 30(b)(5)(A). FRCP 28, in turn, discusses that within the United States, the deposition must be taken before "(A) an officer authorized to administer oaths either by federal law or by the law in the place of examination; or (B) a person appointed by the court where the action is pending to administer oaths and take testimony." Fed. R. Civ. P. 28(a)(1).

/ / /

Of course, certain people are disqualified to be a deposition officer altogether. "A deposition must not be taken before a person who is any party's relative, employee, or attorney; who is related to or employed by any party's attorney; or who is financially interested in the action." Fed. R. Civ. P. 28(c). Thus, Plaintiff and counsel for Defendants may not serve as deposition officers in this lawsuit.

The deposition officer also has multiple duties. One of them includes ensuring that "[t]he deponent's and attorneys' appearance or demeanor [are not] distorted through recording techniques" should the deposition be recorded non-stenographically. *See* Fed. R. Civ. P. 30(b)(5)(B). The accurate recording of the deposition is a serious matter. Courts routinely reject deposition recordings, including those conducted by Zoom, because the recording was "without the hiring and presence of a videographer, who has her own procedures and technology for a certified video deposition," *Alcorn v. City of Chicago*, 336 F.R.D. 440, 442 (N.D. Ill. 2020). *See, e.g.*, *Nusbaum v. MBFG Ltd. P'ship*, No. CIV.A. 07-1032, 2009 WL 2605320, at *1 to *2 (W.D. Pa. Aug. 21, 2009) (discussing how the court "cannot risk the integrity of the recording by allowing a person with no previous experience as either a deposition videographer or deposition officer to serve as both," especially given the person's lack of experience recording a deposition).

Relatedly, if a deposition transcript (or an excerpt thereof) were to be introduced for summary judgment, the party "must attach the court reporter's certification that the deposition is a true and correct copy of the deponent's testimony, as the court reporter who transcribed the testimony has the requisite personal knowledge of the transcript's accuracy," and without such certificate, the transcript is inadmissible for purposes of summary judgment. *See Matthews v. McDonald*, No. 14CV1340-MMA (BLM), 2016 WL 29622, at *6 (S.D. Cal. Jan. 4, 2016) (citations omitted), *aff'd sub nom. Matthews v. Shulkin*, 698 F. App'x 550 (9th Cir. 2017); *see also Hochroth v. Ally Bank*, 461 F. Supp. 3d 986, 998 (D. Haw. 2020); *cf.* Fed. R. Civ. P. 30(f) (discussing the procedures for

deposition transcripts and the related certifications). Of note, "it would be inappropriate for Plaintiff to prepare transcripts of the videotaped depositions. This is especially true given the acrimonious tenor of this litigation to date, and the high likelihood that Defendant would challenge the accuracy of any transcript prepared by Plaintiff." *Nusbaum*, 2009 WL 2605320, at \*2.

The discussion above collectively indicates that, while the parties may conduct a Zoom deposition, there must still be a third-party deposition officer present. And while a public notary may be a deposition officer, that public notary must be in position to certify that the recording of the deposition (or copies thereof) is not distorted. Further, the deposition transcript must be certified by someone other than the litigating parties to ensure its accuracy.

The last two requirements are where Plaintiff fails, as already articulated by both the Defendants and the Magistrate Judge. No part of the case record, including Plaintiff's instant Opposition brief, indicates that the public notary was in position to certify that no distortion in the recording occurred. At best, a public notary who "was not a veteran court reporter," ECF No. 131 at 13, was going to record the deposition herself using Zoom's "record" feature "so it could be authenticated and to allow a proper chain of custody," *see id.* at 5, 8–9, 12. This explanation offers little as to how the recording and the copies will be certified. *Cf. Alcorn*, 336 F.R.D. at 443 (discussing how the officer must have "the appropriate training to . . . ensure that a video deposition is properly recorded with established procedures to go on or off the record, limit noise and interruptions, address technical glitches, and frame the camera view on the witness"). Indeed, having the public notary record the Zoom session is a position that has been expressly rejected by a sister court for being procedurally insufficient. *See id.* As to the transcription of the deposition, Plaintiff's Oppositions make clear that it is he who wishes to transcribe. *See, e.g.*, ECF No. 131 at 8 ("[T]here is nothing that prohibits me from

14

doing the transcript . . . ."). Case law above resoundingly considers such "transcription" inadequate. *See, e.g.*, *Nusbaum*, 2009 WL 2605320, at *2.

Plaintiff provides no supporting authority to justify a different conclusion, other than repeating select passages of the FRCP that no one contests. No one is disagreeing that FRCP 30(b)(4) permits stipulation to conduct deposition over Zoom. No one is disagreeing that FRCP 30(b)(3)(A) allows the deposition to "be recorded by audio, audiovisual, or stenographic means."[5] And no one is disagreeing that FRCP 28(a) permits a public notary to be the deposition officer—but only if that public notary is also qualified to certify as to the non-distortion of the deposition recordings per FRCP 30(b)(5)(B), which is a provision that Plaintiff opportunely omits in his brief. Just because Plaintiff's proposal satisfies parts of the procedure does not permit him to circumvent other parts. All provisions are mandatory. Thus contrary to what Plaintiff thinks, *see, e.g.*, ECF No. 131 at 7, 8, Plaintiff was not in "full compliance," and failed to meet "all the procedural safeguards."

Plaintiff believes that he may avoid these procedures because there are certain measures that Defendants could take to check against potential abuse, such as filing a motion in limine, recording the matter themselves to verify the transcript, or hiring a court reporter themselves.[6] *See, e.g.*, ECF No. 131 at 10. These measures are false

---

[5] Plaintiff cites this passage to argue that a court reporter need not be present. *See* ECF No. 131 at 6–7. While a "court reporter" need not be present, a deposition officer that could comply with its FRCP 30 duties must be present. *See* Fed. R. Civ. P. 30(b)(5)(A) ("Unless the parties stipulate otherwise, a deposition must be conducted before an officer appointed or designated under Rule 28."); *Grano v. Sodexo Mgmt., Inc.*, 335 F.R.D. 411, 415 (S.D. Cal. 2020) (requiring the officer to attend the deposition via the same remote means used to connect the other remote participants).

[6] Plaintiff also argues that Defendants' counsel could have emailed Plaintiff for clarification. *See* ECF No. 131 at 12–13. Pages 4–5, *supra*, indicate that the counsel

15

choices. Defendants should not be the ones devoting their energy and incurring litigation costs when it is Plaintiff who is violating procedure. A conclusion otherwise would incentivize procedural breaches at two different levels. Plaintiff would get away with contravening the rules, and Defendants would need to expend resources because of it.

Finally, Plaintiff's self-serving "white bowtie with gold trim" analogy assumes that the procedural requirements governing depositions are equivalent to mere dress codes. They are not.[7] *Cf. Progressive Sols., Inc. v. Stanley*, No. 16-CV-04805-SK, 2018 WL 1989547, at *7 (N.D. Cal. Mar. 8, 2018) (discussing the material consequences that occurred when the rules governing deposition were not followed, in which one party accused the other of forgery and fabrication of the evidence); *Pavone v. Citicorp Credit Servs., Inc.*, 60 F. Supp. 2d 1040, 1045 (S.D. Cal. 1997) (rejecting deposition transcripts for failure to comply with the proper certification procedures), *aff'd*, 172 F.3d 876 (9th Cir. 1999). *See generally Alcorn*, 36 F.R.D. at 442–44 (discussing the various reasons why "[c]ertification of a deposition is not a trivial function"). Plaintiff is not entitled to decide which measures are superfluous. The FRCP does. And since his entire analogy is unsupported by any legal authority but only his own insistence that the procedures are unnecessary, the Court rejects it.

Ultimately, the defective nature of Plaintiff's proposed depositions provides sufficient grounds to affirm the Magistrate Judge's decision that Defendants' failures to attend the deposition was "substantially justified" or that a sanctions award against them would be "unjust." *See* Fed. R. Civ. P. 37(d)(3).

———————————————

indeed asked. Yet Plaintiff either failed to respond in a timely manner, or provided an answer which indicated that the proposed depositions would stay procedurally improper.

[7] Of course, even if they were mere dress codes, Plaintiff must comply if the rules require so. Plaintiff is not entitled to cherry-pick which rules to follow.

16

### 2.    Depositions Scheduled for September 10, 2020

Even setting aside the problems with Plaintiff's proposed depositions, the Court does not find that the Magistrate Judge's decision was clearly erroneous or contrary to law when she declined to issue monetary sanctions against Defendants for not appearing for the September 10, 2020 deposition.  Defendants were substantially justified in not attending the deposition without a protective order, because the very issue was waiting a decision from the Magistrate Judge—all due to Plaintiff prematurely filing an ex parte motion.  Any sanctions against Defendants would be unjust given the procedural circumstances of Plaintiff's filing(s).

As explained in the Magistrate Judge's January 13, 2021 Order, it was Plaintiff who jumped the gun and filed the ex parte deposition motions before Defendants had the chance to meaningfully sort out the issue with Plaintiff.  Being forced to file the opposition briefs, Defendants raised their concerns on August 19 and September 2, 2020, and thus the entire issue was in front of the Magistrate Judge.  And while the Magistrate Judge's opinion on the matter was pending, it was prudent to withhold any deposition, since it makes no sense to conduct a deposition that may be deemed inadmissible, incurring time and energy to all Parties for nothing.  This is especially true given that it was Plaintiff himself who represented to the Court that a deposition would not be necessary.  *See, e.g.*, ECF No. 71-1 at 2 (asking "to avoid having to do depositions if possible" on August 21, 2020); ECF No. 74-1 at 6 (explaining how it is easier to exchange interrogatories "than forcing the parties to engage in depositions" on August 23, 2020).

Plaintiff argues that Defendants should have filed a protective order instead.  *See, e.g.*, ECF No. 131 at 12.  No part of Defendants' brief responds to the Magistrate Judge's reasoning that a protective order would have been duplicative and procedurally improper.  Defendants already raised their concerns—twice—to correspond to Plaintiff's two ex

parte motions. And filing a protective order would have been denied by the Magistrate Judge for being premature absent any meet-and-confer, something that Defendants could not do because Plaintiff already filed his ex parte motions to force depositions his way. In sum, Defendants were justified in their conduct.

Plaintiff also avers that Defendants engaged in "bad faith" when the counsel represented to Plaintiff that the Magistrate Judge's Chamber Rules does not allow same day conferences. *See* ECF No. 131 at 11. Regardless of what Plaintiff thinks, the Chambers Rules indeed show an aversion to conferences held the same day. *See, e.g.*, Magistrate Judge Crawford Chambers Rule VIII.E.3 ("This Court considers a minimum of seven (7) days prior to the anticipated filing date of the Joint Motion for Determination of Discovery Dispute to be a reasonable time period for a party to participate meaningfully in the preparation of a Joint Motion."). The counsel's statement does not demonstrate bad faith, and certainly does not warrant a decision that the Magistrate Judge clearly erred in declining to issue sanctions.

### 3. Depositions Scheduled for October 30 and November 17, 2020

Defendants were further justified to decline attending the October 30 and November 17, 2020 depositions. On October 5, 2020, the Magistrate Judge explicitly denied "Plaintiff's request to conduct depositions without an independent, qualified deposition officer who meets the requirements of Rule 30 of the Federal Rules of Civil Procedure." ECF No. 87 at 8. As discussed *supra* pages 12–14 of this Order, the requirements under FRCP 30 include (1) the deposition officer to be in position to certify that the recording of the deposition is not distorted, which is more than just recording the Zoom session by herself, and (2) a certification of the deposition transcript, which must be done by someone other than the litigating parties. Yet when Defendants' counsel once again inquired to Plaintiff about these concerns, Plaintiff doubled down on his "same plans as the last depo notices," insisting that he can transcribe the deposition record

himself.  *See* ECF No. 101 at 5–6; *cf.* ECF No. 68-1 (initially requesting in his Ex Parte Application to "record the depositions using Zoom and then to have them transcribed later if needed").  Such measures violated the Magistrate Judge's instructions, despite what Plaintiff believes, *see* ECF No. 131 at 13–14.

In light of a proposal that contravened what the Magistrate Judge had ordered, Defendants could rely on the Magistrate Judge's October 5, 2020 Order to not attend.  A reliance on a court order that directly spoke to the matter substantially justifies the non-attendance, and any sanctions award against Defendants for adhering to the Magistrate Judge's Order would be unjust.  This is true even without any protective order on the record, since the Magistrate Judge's Order already instructed what a proper "deposition" must entail.  There is no basis to find that the Magistrate Judge's decision to decline any penalty was clearly erroneous or contrary to law.

### D.     Denial of Default Judgment

The same reasons as to why monetary sanctions are unwarranted demonstrate why default judgment, a "very severe" penalty, *Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007), would be inappropriate.  A default judgment is only justified if there was "willfulness, bad faith, and fault."  *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003)); *see also Computer Task Grp., Inc. v. Brotby*, 364 F.3d 1112, 1115–17 (9th Cir. 2004) (finding willfulness when the defendant engaged in "a consistent, intentional, and prejudicial practice").

Even under de novo review of the Magistrate Judge's decision, the discussions *supra* Section IV.C demonstrate, at minimum, that Defendants were not engaging in any form of willful, bad faith, and faulty conduct.  Defendants were justified in waiting on any deposition until the Magistrate Judge spoke on the matter.  And once the Magistrate Judge spoke, Defendants rightfully protested attending a deposition that violated the Magistrate Judge's instructions.

19

Plaintiff questions why the Magistrate Judge did not consider the 5-factor test in "support" of default judgment. *See* ECF No. 131 at 15. It is because the test was not triggered by the facts. The 5-factor test on whether sanctions should be in the form of default judgment, *see, e.g.*, *Porter v. Martinez*, 941 F.2d 732, 733 (9th Cir. 1991); *Connecticut Gen. Life*, 482 F.3d at 1096, requires facts warranting sanctions. This Order has explained how Defendants did nothing wrong with respect to the instant dispute. And as the preceding paragraph demonstrates, a default judgment requires a finding of willfulness, bad faith, and fault. Since this necessary condition was not met, there was no basis for default judgment, and thus the Magistrate Judge was not required to engage in the 5-factor analysis.[8] *Cf. Connecticut Gen. Life*, 482 F.3d at 1096 (discussing how the 5-factor test is "a way to think about what to do, not a set of conditions precedent for sanctions or a script that the district court must follow").

Plaintiff's other arguments do not convince the Court either. Plaintiff argues that the depositions were "critical" to his case and that his chances of prevailing are "ruined." *See* ECF No. 131 at 14–15. Page 17, *supra*, discusses how he admitted that they are not. *See* ECF No. 71-1 at 2; ECF No. 74-1 at 6; *see also* ECF No. 87 at 7 ("[P]laintiff has stated in other Ex Parte Applications that the depositions he wants to take would be unnecessary if he is granted an extension of the current discovery deadline so that pending discovery disputes can be resolved, and he can serve defendants with additional discovery requests."). Plaintiff also argues how "this is a civil rights case having great

---

[8] Even if the Court considered the factors that Plaintiff so urges, Plaintiff fails. The 5-factor test accounts for: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Connecticut Gen. Life*, 482 F.3d at 1096. With summary judgment also pending before the Court, at least three factors (factors 3 to 5) weigh against default judgment.

importance." ECF No. 131 at 15. This begs the question as to whether he prevails on the merits. Finally, Plaintiff argues there was bad faith based on the discovery dispute relating to the California Law Enforcement Telecommunications System ("CLETS") documents. *See id.* This is wholly unrelated since Plaintiff must show how the non-attendance of the deposition was in bad faith. Even assuming that the CLETS dispute is relevant, the Magistrate Judge has decided on the matter, *see* ECF No. 110 at 2–4, and no part of the Magistrate Judge's Order supports a claim of bad faith which is an allegation beyond what the Magistrate Judge ordered Defendants to do.

## V. CONCLUSION

Despite Plaintiff's numerous contentions, Plaintiff's arguments fail to persuade the Court. In sum, the Magistrate Judge was justified in declining any request for an "extension" for a meet-and-confer or "briefing." Plaintiff's proposed depositions were procedurally unsound. Even if the depositions were proper, Defendants were justified in not attending. Even if Defendants were supposed to attend, Plaintiff is not entitled to monetary sanctions, let alone default judgment. For the reasons discussed in this Order, the Court **OVERRULES** Plaintiff's Oppositions to the Magistrate Judge's January 13, 2021 Order, ECF Nos. 128, 131, and **ADOPTS** the Magistrate Judge's Report and Recommendation to deny default judgment.

**IT IS SO ORDERED.**

Dated: July 8, 2021

Hon. Gonzalo P. Curiel
United States District Judge

19-cv-0751-GPC-KSC