1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9           SOUTHERN DISTRICT OF CALIFORNIA
10

11   AARON RAISER,                    Case No.:  19-cv-00751-GPC
12                      Plaintiff,     **ORDER:**
13   v.
14   SAN DIEGO COUNTY,                 **(1) DENYING PLAINTIFF'S
15                      Defendant.     MOTION FOR
                                       RECONSIDERATION OF ECF NO.
16                                     199; AND**
17                                     **(2) DENYING PLAINTIFF'S
18                                     MOTION FOR
                                       RECONSIDERATION OF ECF NO.
19                                     200; AND**
20
21                                     **(3) DENYING PLAINTIFF'S EX
                                       PARTE APPLICATION FOR
22                                     ORDER**
23                                     **[ECF Nos. 206, 207, 221]**
24
25       On July 9, 2021, this Court issued an Order overruling Plaintiff Aaron Raiser
26   ("Plaintiff")'s opposition to the Magistrate Judge's Order (ECF 112, "MJ Order") and
27   adopting the Magistrate Judge's Report and Recommendation regarding a deposition
28
                                        1

dispute. ECF No. 199. On the same day, this Court also issued an Order granting summary judgment in favor of Defendants. ECF No. 200 ("SJ Order" or "Summary Judgment Order"). On August 6, 2021, Plaintiff, proceeding *pro se*, filed two motions pursuant to Federal Rule of Civil Procedure ("Rule") 59: a Motion for Reconsideration of ECF No. 199, and a Motion for Reconsideration of ECF No. 200. ECF Nos. 206, 207. Each of these Motions also included a request that Judge Curiel "certify" that he had read the Motion and supporting papers. On September 15, 2021, Plaintiff filed an ex parte Motion for Application for an Order that all non-judicial staff be recused from working on the case, that Judge Curiel recuse himself, that Plaintiff be allowed to exceed the page limit, that Plaintiff be allowed to amend his Motion after receiving a copy of ECF No. 218, and that Judge Curiel again "certify" that he personally read and decided the pending ex parte matters. ECF No. 220. On September 22, 2021, Plaintiff filed an Amended Ex Parte Application for Order addressing the same grounds, which this Court reads as replacing ECF No. 220. ECF No. 221. On October 1, 2021, a hearing was held on the pending motions and the Court thereafter took the matters under submission.

Having reviewed the filed papers relating to these pending motions and having considered the oral arguments made by the parties at the October 1, 2021 hearing, the Court DENIES Plaintiff's Motions for Reconsideration, Nos. 206, 207, 221.

## I.   Plaintiff's Motions for Reconsideration

While Rule 59(e) permits a district court to reconsider and amend a previous order, this is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003). Motions for reconsideration are disfavored and should only be granted in narrow instances. "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Id.*

1   (quoting *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)).

2   A Rule 59(e) motion cannot be used to raise arguments or present evidence for the first

3   time when such arguments or evidence could have reasonably been raised earlier in the

4   litigation. *Kona*, 229 F.3d at 890. "A motion to reconsider is not another opportunity for

5   the losing party to make its strongest case, reassert arguments, or revamp previously

6   unmeritorious arguments." *Ausmus v. Lexington Ins. Co.*, No. 08-cv-2342, 2009 WL

7   2058549, at *2 (S.D. Cal. July 15, 2009). Whether to grant or deny a motion for

8   reconsideration rests with the sound discretion of the district court. *Navajo Nation v.*

9   *Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003).[1]

10       **A.**    **Plaintiff's Motion for Reconsideration of ECF No. 199**

11       The central question answered by ECF No. 199 and the related Magistrate Judge

12   Order at ECF No. 112 was whether Defendants were justified in declining to appear at

13   potentially procedurally unsound depositions noticed by Plaintiff, and whether their

14   declinations warranted sanctions or default judgment. This question was prompted by

15   Plaintiff's desire to take depositions via Zoom without the presence of a court reporter,

16   but simply with "any person" (ECF No. 68-1 at 12) or with a notary (ECF No. 81 at 3).

17   This meant that the depositions would take place "without the procedural protections set

18   forth in Federal Rule of Civil Procedure 30, which require the presence of a qualified

19   deposition officer to create and maintain an impartial record." ECF No. 112 ("MJ Order")

---

[1] Local Rule 7.1(i) requires an affidavit by a party or witness to accompany any motion for reconsideration. Plaintiff has only attached declarations to his Motions for Reconsideration, and those declarations merely summarize the arguments that Plaintiff makes in his Motion. This is not the first time that Plaintiff has failed to follow the procedural rules of this Court, and this alone could justify denial of Plaintiff's Motion. *Isis Pharmaceuticals, Inc. v. Santaris Pharma A/S Corp.*, 2014 WL 2212114, at *2 (S.D. Cal. May 28, 2014) (finding that party's failure to submit affidavits where required, and submittal of a declaration merely summarizing motion's arguments, would be a sufficient basis to deny motion for reconsideration). However, in the interest of a full record, and to make clear to Plaintiff why his motions are being denied, this Court will proceed on the basis of Plaintiff's filings despite their improper form and substance.

at 3. Defendants had agreed to take remote depositions via Zoom, but did not waive Rule 30's protections. *Id.* Plaintiff's position is that his hiring of a notary was sufficient to meet the procedural standards set out in Rule 30, because the notary could certify the accuracy of the Zoom recording and each party could either transcribe the deposition themselves, or "Plaintiff could pay the notary to transcribe it or simply transcribe it himself and allow the notary to certify it." ECF No. 206 at 11.

This Court already addressed Plaintiff's arguments in great detail in its previous Order adopting the Magistrate Judge's Report and Recommendation. ECF No. 199 at 14. The Court has previously noted that it is not sufficient for any public notary to simply certify the audio or video recording, unless the parties so stipulate, if that notary is not appropriately trained or experienced in the certification of such recordings. [2] *Id*. Further, it would be highly improper for Plaintiff himself to transcribe the deposition or serve as the deposition officer. *Id.* at 15; *see* Fed. R. Civ. P. 28(c) (disqualifying any person who is financially interested in the action, which would include parties to the litigation). Under both of Plaintiff's proffered scenarios, the deposition transcripts and the underlying audio and video recordings would likely be inadmissible as evidence because of their procedural inadequacies if the notary did not have sufficient training or experience to properly authenticate them—and the record does not show that the notary had such ability. *Id*. at 13; *see Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002) (holding that unauthenticated documents cannot be considered in a motion for summary judgment); *Pavone v. Citicorp Credit Services, Inc.*, 60 F. Supp. 2d 1040, 1045 (S.D. Cal. 1997) (declining to consider a deposition as evidence where the deposition

---

[2] Plaintiff's citations to *Slaughter v. Boeing Co.*, No. 11-cv-537-DN-BCW, 2012 WL 5473134, at *2 (D. Utah Nov. 9, 2012) (where notary served as deposition officer) are not controlling or afforded weight given that *Slaughter* was decided by a district court judge in Utah, which is not part of the Ninth Circuit.

transcript was not properly authenticated, despite the fact that a court reporter was present at the deposition).

Regardless, on a Rule 59 motion, the Court is not relitigating the finer points of whether Plaintiff's proposed deposition procedures were sound, but rather, whether Plaintiff has met the standard for reconsideration by presenting newly discovered evidence, by convincing the Court that it has committed clear error, or by presenting an intervening change in the controlling law.

### 1.    New Evidence

Nothing in Plaintiff's Motion for Reconsideration (ECF No. 206) can be characterized as new evidence. Plaintiff's Declaration and Memorandum of Points and Authorities seek to relitigate this Court's findings by disagreeing with their outcome, rather than pointing to newly discovered support for Plaintiff's contentions. The only possible "new evidence" contained in Plaintiff's Declaration is an unsupported assertion of "substantial bias" against Plaintiff, based on Plaintiff's reading of file metadata showing Chunghang Lee as the apparent author of ECF No. 199. ECF No. 206 at 3. Plaintiff alleges a "material and substantial coordinated effort by pro se and staff attorneys to doom Plaintiff's cases and defeat them no matter what." *Id.* These specious and conspiratorial allegations are not evidence. *See Yagman v. Republic Ins.*, 987 F.2d 622, 626 (9th Cir. 1993) (mere speculative assertions of invidious motive are insufficient to show judicial bias). Therefore, no newly discovered evidence supports reconsideration of ECF No. 199.

### 2.    Clear Error

In order to present a viable Rule 59(e) claim under this prong, Plaintiff must establish that this Court committed clear error in overruling Plaintiff's objections to the Magistrate Judge's Order and adopting the Magistrate Judge's Report and Recommendation. Plaintiff's Motion takes issue with many details of this Court's

5

previous Orders, including the Court's representation of how Plaintiff phrased certain arguments and whether Magistrate Judge Crawford's chambers rules should provide for a reply brief. However, a finding of clear error requires more than mere disagreement with a Court's decision. That is, the issue before the Court on this Motion for Reconsideration is not strictly whether Plaintiff's proposed depositions were procedurally sound. Rather, the question posed is whether it was clear error for the Court to adopt and ratify the Magistrate Judge's Order finding it reasonable for Defendants not to attend the noticed depositions in light of procedural qualms and the Magistrate Judge's previous orders. Plaintiff must carry his burden in convincing this Court that it was clear error not to order sanctions against Defendants. *See Salem v. Federal Deposit Insurance Corporation for La Jolla Bank, FSB*, No. 15-cv-1114-AJB-BGS, 2017 WL 1375616, at *2 (S.D. Cal. Apr. 17, 2017) (discussing moving party's burden). The Court finds that Plaintiff has not done so.

While Plaintiff's Motion for Reconsideration of ECF No. 199 focuses on the specifics of whether Plaintiff's depositions were procedurally adequate, this Court ruled in ECF No. 199 that "*[e]ven if the depositions were proper*, Defendants were justified in not attending . . . [and therefore] Plaintiff is not entitled to monetary sanctions, let alone default judgment." ECF No. 199 at 21 (emphasis added). Thus, even if Plaintiff could prove that the depositions were procedurally proper—which he has not done—such proof would be beside the point, as Plaintiff has not shown the Court why it was clear error for the Court to find it reasonable at the time for Defendants not to attend procedurally doubtful depositions in light of the Magistrate Judge's ruling. At most, Plaintiff's motion reiterates the unsupported argument that "nothing prohibits the Defendants from simply comparing any transcript against the Zoom video which the Defendants are permitted to keep, or simply get a copy of the video from the notary and compare," (ECF No. 206 at 19) or that "Zoom allows all participants to record the proceedings, and thus, Plaintiff

6

1   being the deposition officer would not be an issue as nothing would be in dispute . . ." *Id.*

2   at 21.[3] Plaintiff seems to feel that these courses of action are fair enough that this Court

3   should simply agree. These proposals illustrate Plaintiff's fundamental misunderstanding

4   of the Federal Rules of Civil Procedure, which require strict and clear adherence even if

5   one party personally feels that their suggested approach to a deposition would be fair

6   enough.

7       Plaintiff also argues that, because he withdrew his motions pending before

8   Magistrate Judge Crawford, the noticed depositions should have been allowed to proceed.

9   ECF No. 206 at 21. Magistrate Judge Crawford's Order states that "[o]n September 17,

10  2020 and September 24, 2020, before the Court ruled on the deposition issues that were

11  still pending, plaintiff filed Notices withdrawing the portions of his pending *Ex Parte*

12  Motions . . . In this Court's view, plaintiff was not entitled to unilaterally withdraw the

13  dispute over his proposed exceptions to the Rule 30 deposition requirements from the

14  Court's consideration, and defendants were entitled to disregard the withdrawals and to

15  continue to await the Court's ruling before appearing for any depositions." ECF No. 112

16  _____

17  [3] Plaintiff also takes issue with the Court's citations to *Alcorn v. City of Chicago*, 336 F.R.D. 440, 442

18  (N.D. Ill. 2020) and *Nusbaum v. MBFG Ltd. P'ship*, No. 07-1032, 2009 WL 2605320, at *1 (W.D. Pa.

19  Aug. 21, 2009), which the Court will pause here to address. According to Plaintiff, the Court erred in

20  citing to these cases because Plaintiff reads the citations as establishing that the Federal Rules explicitly require that a deposition officer must be a videographer or court reporter. ECF No. 206 at 27. This is not

21  a correct reading of the Court's order, which nowhere states that the deposition officer *must* be a videographer or court reporter. These cases were cited by the Court to demonstrate the seriousness with

22  which courts examine the qualifications of a deposition officer—which also justifies Defendants' unwillingness to attend depositions without clarity or assurances as to the deposition officer's identity or

23  qualifications. *Cf.* ECF No. 206 at 4 ("If I have the money likely I'll pay someone to do it, if not there is nothing that prohibits me from doing the transcript and then you . . . [can] review[] it alongside the video

24  . . .") After citing *Alcorn* and *Nusbaum*, the Court explicitly stated: "The discussion above collectively indicates that, while the parties may conduct a Zoom deposition, there must still be a third-party

25  deposition officer present. And while a public notary may be a deposition officer, that public notary must be in a position to certify that the recording of the deposition (or copies thereof) is not distorted.

26  Further, the deposition transcript must be certified by someone other than the litigating parties to ensure its accuracy." ECF No. 199 at 14.

27                                          7

28                                                                        19-cv-00751-GPC

at 9. The Court agrees with Magistrate Judge Crawford. Once Plaintiff asked the Magistrate Judge to intervene in the deposition dispute via his *ex parte* motions, the matter was before the Court, and it was the Court's prerogative to decide how best to clarify the issue for the parties, even if one of the parties disagreed. See *In re BofI Holding, Inc. Securities* Litigation, 2021 WL 1812822, at *4 (S.D. Cal. May 6, 2021) (noting that district courts and magistrate judges handling pretrial matters have broad discretion to control discovery and manage the course of litigation); *United States v. Hansen*, 233 F.R.D. 665, 669 (S.D. Cal. 2005) (discussing magistrate judges' authority to manage pretrial discovery matters and enter orders resolving discovery disputes). Magistrate Judge Crawford's October 5, 2020 Order provided needed clarification in light of Plaintiff's various representations to the Court that he might proceed with "any person" (ECF No. 68-1 at 12), or with himself as the deposition officer (ECF No. 78 at 2) (arguing that "having a third-party present to administer the oath should not be an absolute requirement"). Given Magistrate Judge Crawford's justified concern that Plaintiff might not understand the requirements of FRCP 30, and the legitimate, recurring procedural concerns raised by Defendants regarding the depositions, it was prudent for Magistrate Judge Crawford to issue a ruling and provide guidance to the parties. The October 5, 2020 Order also extended the discovery deadline with respect to the depositions, allowing Plaintiff to proceed in a procedurally appropriate manner following the Court's guidance. ECF No. 87 at 7. Thus, Plaintiff's opportunity to proceed with depositions was not foreclosed. If Plaintiff did not want to invoke the Court's authority and intervention, his recourse was with the meet-and-confer process that his *ex parte* motions circumvented.

In sum, the Court finds that Plaintiff has not shown clear error on the part of this Court in ECF No. 199 such that reconsideration should be granted.

### 3.   Intervening Change in Controlling Law

Plaintiff's caselaw citations are all to cases that were decided before the Court's instant order. Therefore, Plaintiff has not pointed to an intervening change in controlling law that would justify reconsideration of this Court's decision.

### B.   Plaintiff's Motion for Reconsideration of ECF No. 200

In ECF No. 207, Plaintiff asks this Court to reconsider its July 8, 2021 Order granting summary judgment in favor of Defendants (ECF No. 200). In that Order, the Court found that, as to three separate incidents Plaintiff experienced with Sheriff Deputies Fealy, Murphy, and Rossall, respectively, there were no genuine issues of material fact that would preclude a grant of summary judgment for the Defendants. The Court analyzed each incident in turn to determine whether the officer in question had a reasonable basis to conduct a brief, non-intrusive investigatory stop, and whether any of these stops rose to the level of an unconstitutional detention in violation of the Fourth Amendment.

In the first incident, Detective Fealy and another officer not named in the suit stopped and questioned Plaintiff for about 10 to 14 minutes while Plaintiff's car was parked on the side of a road near Fallbrook, California. ECF No. 200 at 4, 7. As a basis for his decision to briefly stop and question Plaintiff, Detective Fealy explained that it is unusual to see individuals parked in their cars in that area, and that the area is known as a place where individuals dump stolen vehicles, stop to use drugs and alcohol in their vehicles, and potentially commit theft from the surrounding agricultural properties, among other offenses.[4] *Id.* at 5. The area was unpopulated, "rural" (ECF No. 165-1 at 2),

---

[4] During the October 1, 2021 hearing on Plaintiff's Motions for Reconsideration, the Court stated that during this first stop involving Detective Fealy, Plaintiff's car had mosquito screens in place of the back windows. Plaintiff objected to this and argued that the screens were not there. Hr'g Tr. 33. In reviewing the record, the Court refers Plaintiff to his deposition, ECF No. 132-2 at 27, which suggests but does not definitively state that the screens were in place during the interaction with Detective Fealy. However,

1   "with no houses around per se" (Plaintiff's description at ECF No. 165-1 at 2), and

2   "desolate" (*Id.*). The Court found that, based on Detective Fealy's detailed explanation of

3   his rationale for the detention, Detective Fealy had formed a reasonable suspicion

4   sufficient to detain Plaintiff for the brief period at issue, and that the investigatory stop

5   did not extend longer than necessary in terms of length, scope, and focus. ECF No. 200 at

6   22. Similarly, in the second incident, the Court found that despite the fact that the initial

7   dispatch call on its own did not provide reasonable suspicion, *id.* at 28, Detective Murphy

8   had a duty to follow up on the call and investigate it, and that based on Detective

9   Murphy's experience and Plaintiff's car's appearance, it was reasonable for Detective

10   Murphy to stop Plaintiff for between 8 and 11 minutes. *Id.* at 10. As to the third incident,

11   the Court found that the investigatory stop by Detective Rossall, which lasted two

12   minutes, was reasonable. *Id.* at 29. The parties agree that none of the stops involved

13   threats of detention, violence, or arrest. *Id.* at 7, 10, 29. Since the Court found no

14   violations of Plaintiff's Constitutional rights, there was no basis to support a § 1983

15   claim. In addition, the Court found that Plaintiff's false imprisonment claims were

16   waived, *id.* at 31, and that there was no "threat, intimidation, or coercion" to support a

17   viable Bane Act claim. *Id.*

18       The legal standard here, as above, is whether Plaintiff has presented newly

19   discovered evidence, clear error on the part of the Court, or an intervening change in

20   controlling law that convinces the Court it should amend or alter its judgment.

21          **1. New Evidence**

22       Plaintiff repeats nearly verbatim his allegations of "substantial bias" against him by

23   courthouse staff, as well as his belief that his matters are being decided without Judge

---

the Court acknowledges that ECF No. 165-7, a photograph showing Plaintiff's car during the first stop, does not show mosquito screens on the back windows.

Curiel's input or approval. ECF No. 207 at 3. This is the only possible "new evidence" that his Motion for Reconsideration adduces. As the Court noted above, such unfounded allegations are in no way "new evidence" that would support or require a reconsideration of this Court's previous Order.

Further, at the start of the October 1, 2021 hearing, the Court identified the documents that it had reviewed in preparing for the motions and provided a tentative indication as to the Court's view of the pending motions. Hr'g Tr. at 3-4. Mr. Raiser had an opportunity to address the tentative ruling and the Court has considered Mr. Raiser's arguments in deciding the motions at bar. Mr. Raiser has failed to present new evidence that supports his motions.

### 2.  Clear Error

Motions for reconsideration under Rule 60(b) or Rule 59(e) "are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." *Kilbourne v. Coca-Cola Co.*, No. 14-cv-984-MMA, 2015 WL 10943610, at *2 (S.D. Cal. Sept. 11, 2015). The fact that a litigant merely disagrees with the Court's decision does not render relief appropriate. *Salem*, 2017 WL 1375616 at *3. Plaintiff's Motion cavils at many of the details underlying this Court's previous Order, including specific word choices (i.e. what "desolate" means, ECF No. 207 at 4), whether Plaintiff's car actually had broken windows or had the appearance of broken windows (*id.* at 16), and numerous other objections. It is unnecessary for this Court to address each of Plaintiff's objections point by point, however, because these are exactly the type of arguments disfavored and disallowed in a motion for reconsideration.

Not only does Plaintiff's Motion focus solely on legal arguments and factual disputes that could have been raised at the time of the challenged decision, but most, if not all, of these arguments were in fact so raised—and this Court has already decided on them. Even if properly raised in the instant Motion, Plaintiff's arguments would not

change the outcome of this Court's decision. For example, in support of his overarching

argument that summary judgment was wrongly granted for Defendants, Plaintiff argues

that his conduct was legal: "There is no conceivable way a person starting their car can be

considered furtive, or nervous behavior. As Plaintiff pointed out at briefing, people are

free to go about their business when an officer approaches." ECF No. 207 at 9. However,

this argument, like the other arguments in Plaintiff's Motion, fails to take into account

what this Court has already explained, which the Court will now repeat:

> Mr. Raiser consistently conflates the legality of *his* conduct with the
> *officer's* prerogative to be reasonably suspicious given the totality of the
> circumstances. It does not matter that Mr. Raiser was not charged of any
> crime, or that he had the right to 'flee' or otherwise not engage with the
> officer. It also matters little whether Mr. Raiser was entitled to park his cars
> in the area at-issue. Instead, the operative concern is whether those forms of
> conduct (which Mr. Raiser had every right to engage in), combined with the
> surrounding circumstances and the officer's experience, provided a
> reasonable suspicion to detain Mr. Raiser. ECF No. 200 at 21 (emphasis in
> original).

Whether there was reasonable suspicion to support the brief interactions at issue,

and whether Plaintiff was doing anything wrong, are thus separate matters. This Court

has already found that reasonable suspicion existed in all three interactions.

Plaintiff does not provide the Court with any caselaw in which investigatory stops

of 10-14 minutes, 8-11 minutes, or two minutes were found to be unreasonable and

therefore in violation of the Fourth Amendment. Nor has Plaintiff provided evidence

showing that the detectives undertook any purpose outside of the usual permissible

inquiries such as checking the driver's license and determining whether there are

outstanding warrants against the driver. *United States v. Evans*, 786 F.3d 779, 786 (9th

Cir. 2015). While a stop may last no longer than is reasonably necessary to effectuate its

purpose, "the court should not indulge in unrealistic second-guessing" of whether a stop

might theoretically have been accomplished more quickly. *U.S. v. Sharpe*, 470 U.S. 675, 686 (1985). The legal standard for whether a stop was unreasonable does not require officers to shave off seconds or minutes from the interaction wherever possible, but rather, looks to whether the purpose for the stop was diligently pursued. *Id.* at 685 ("[O]ur cases impose no rigid time limitation on *Terry* stops"). And though each case does, of course, turn on its own facts, the Court is guided by the parameters set out by previous cases in determining how long a reasonable stop might be. The Court was unable to find caselaw suggesting that a stop of the length at issue here was unreasonable. *See United States v. Barragan,* 19 F.3d 29, 29 (9th Cir. 1994) (twenty-minute stop to investigate driver's license and car registration was reasonable); *Cooley v. Leung,* 637 Fed. Appx. 1005, 1007 (9th Cir. 2016) (15-minute traffic stop was not unreasonably prolonged); *Carr v. City of Redondo Beach,* 275 Fed. Appx. 592, 594 (9th Cir. 2008) (20-25 minute stop was Constitutional); *cf. Evans,* 786 F.3d at 786 (9th Cir. 2015) (extending stop by eight minutes to perform unrelated tasks without reasonable suspicion justifying prolongation violated Fourth Amendment).

Here, Plaintiff failed to create a genuine issue of fact that any of the three stops were extended any longer than reasonable under the circumstances. Viewing the evidence in a light most favorable to Plaintiff, even after the Court credits Plaintiff's assertion that he observed Detective Fealy on a cellphone for about a minute, the Court does not find that this could create a genuine issue of material fact as to whether Plaintiff's traffic stop was unreasonably extended. The fact that Detective Fealy may have been on a cellphone for a minute does not demonstrate that he undertook any purpose outside of the usual permissible inquiries.

Plaintiff also argues that Defendants were required to provide the Court data showing that the location of Detective Fealy's interaction with Plaintiff was indeed a "high-crime area." In support of this argument, Plaintiff cites to *United States v.*

*Montero-Camargo*, 208 F.3d 1122, 1139 n.32 (9th Cir. 1999) and *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). However, neither of these cases provide support for Plaintiff's contention. Right after Plaintiff's citation, *Wardlow* explicitly states that officers may take into account the characteristics of a location to determine whether circumstances are suspicious and that "the determination of reasonable suspicion must be based on common sense judgments and inferences about human behavior." *Wardlow,* 528 U.S. 119, 124 (2000) ("But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation. Accordingly, we have previously noted the fact that the stop occurred in a 'high crime area' among the relevant contextual considerations in a *Terry* analysis.") *Wardlow* did not hold that data was always required to support an evaluation of whether an area might be "high crime."

As to *Montero-Camargo*, Plaintiff provides an incomplete cite to a footnote by leaving out the beginning of the sentence, which reads: "*With respect to populated areas, or areas in which people typically carry on legitimate activities* (including areas where people frequently camp or hike), we share our concurring colleagues' concern, and agree that more than mere war stories are required to establish the existence of a high-crime area. As we have stated in the text, courts should examine with care the specific data underlying any such assertion." *Montero-Camargo*, 208 F.3d at fn. 32 (emphasis added). The majority's footnote therefore discusses the need for data in the specific context of a populated area, which is not at issue in Plaintiff's case. The location of Plaintiff's interaction with Detective Fealy is much more akin to the circumstances discussed in the text the majority refers back to: "In this case, the 'high crime' area is in an isolated and unpopulated spot in the middle of the desert. Thus, the likelihood of an innocent explanation for the defendants' presence and actions is far less than if the stop took place

14

in a residential or business area." *Id.* at 1139. Like the location in *Montero-Camargo*, Plaintiff's location was isolated and unpopulated.[5]

Plaintiff also argues that the Court erred in its legal analysis as to Plaintiff's Bane Act claims. ECF No. 207 at 36. This Court found that Plaintiff had not established an essential element of his Bane Act claim because Plaintiff had not alleged coercion or any kind of threat other than the fact that Detective Rossall was in full police uniform and carrying a gun. ECF No. 200 at 32. "Under Mr. Raiser's interpretation of 'violence,' every interaction that someone has with an armed police officer would constitute a Bane Act claim. That is not the law." *Id.* (citing, *inter alia*, *Quezada v. City of Los Angeles*, 222 Cal. App. 4th 993, 1008 (2014)). Plaintiff argues in his Motion for Reconsideration that "nothing in the text of the [Bane Act] statute requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Cornell v. City & Cnty. of S.F.*, 17 Cal. App. 5th 766, 800 (Cal. Ct. App. 2017). Under this argument, presumably, there would be sufficient coercion in the investigatory stop itself to satisfy the elements of a Bane Act claim. However, this is an incomplete and therefore incorrect reading of *Cornell*. *Cornell* did not repudiate the basis for the *Quezada* decision, established by *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 959-960 (Cal. Ct. App. 2012): that the Bane Act requires coercion independent from the coercion inherent in the wrongful detention itself. *Id.* at 797. Instead, *Cornell* analyzes whether *Shoyoye*'s reasoning applies in the specific situations where a constitutionally unlawful arrest has been proven. *Cornell*, 17 Cal. App. 5th at 797. *Cornell* specifically held that "where, as here, an unlawful arrest is properly pleaded and proved, the egregiousness required by Section 52.1 is tested by whether the

---

[5] Plaintiff's argument at the October 1, 2021 hearing that the area is not unpopulated because there is a highway nearby is unconvincing. Common sense dictates that highways, even and especially well-traveled highways, frequently run through remote and unpopulated areas. Hr'g Tr. at 26.

circumstances indicate the arresting officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." *Id.* at 801-802. Since there was no arrest at all in Plaintiff's situation, let alone a constitutionally unlawful arrest, *Cornell*'s reasoning does not apply and is no help to Plaintiff. Therefore, Plaintiff has not offered a legal argument sufficient to convince this Court that it committed clear error in deciding that Plaintiff had not satisfied the elements of a Bane Act claim that could survive summary judgment.

A motion for reconsideration is not a place for Plaintiff to reiterate the same arguments (i.e. the legality of his conduct or the unreliability of the officers' statements) he has already made at the summary judgment stage. Nor does it provide an avenue for Plaintiff to raise new arguments that could have reasonably been raised earlier in the litigation. *Kona Enterprises, Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000). Following a careful reading of Plaintiff's moving papers, the Court finds that there is no basis to find that the Court committed clear error in the challenged Summary Judgment Order.[6]

### 3. Intervening Change in Controlling Law

As with ECF No. 206, Plaintiff only cites cases that were decided before the Order of this Court at issue. Therefore, Plaintiff has failed to point to an intervening change in controlling law that would justify reconsideration of this Court's decision.

---

[6] The Court further noted in its Summary Judgment Order that even if Plaintiff had proven the alleged constitutional violations, Defendants would have been entitled to qualified immunity. ECF No. 200 at 33, fn. 9. Thus, even if Plaintiff had convinced the Court of clear error as to reasonable suspicion, qualified immunity presented an additional hurdle that Plaintiff failed to surmount.

16

1

## II.   Plaintiff's Amended Application for Order

Plaintiff's Amended Application for an Order asks: (1) for the recusal of all non-judicial staff from his case, (2) that Judge Curiel certify he personally read and decided the present ex parte matters; (3) that Plaintiff be allowed to exceed the page limit; (4) that Judge Curiel be recused.[7] To the extent that Plaintiff uses this Application to attempt to relitigate the details of the Court's Summary Judgment order, the Court will pass over these arguments as being improperly raised, and because this Court has already addressed the same arguments in its analysis of Plaintiff's Motions for Reconsideration above.

The overarching theme of Plaintiff's Application is Plaintiff's perception that judicial staff are biased against him and that Judge Curiel "did not read the briefing and documents that went into ECF 200." ECF No. 221-1 at 47. Plaintiff also alleges that "Plaintiff has had issues for years with the staff attorneys and others in this court which is not an easy issue to deal with or discuss and a separate case to remedy the injustice and get them off of Plaintiff's case is proceeding in this court in case 3:20-cv-01490." *Id.* This perception is supported, according to Plaintiff, by the outcome against him in the Court's summary judgment Order, as well as by what Plaintiff perceives to be the outcome in ECF No. 211 (Order Denying Plaintiff's Application for an Order Declaring Plaintiff Does Not Have to Pay Costs).

Turning first to Plaintiff's allegations of bias by the judiciary and its staff, Plaintiff's discovery of "author" names in Word document metadata is not the smoking gun that he believes it to be, as the Court has already explained. ECF No. 111 at 1-2

---

[7] As to Plaintiff's request to be allowed to exceed the page limit, this Court admonishes Plaintiff not to overstep the procedural bounds laid out in the Local Rules. When parties violate local rules, the district court has discretion to devise such sanctions as it deems appropriate, short of granting summary judgment based on the violation. *Rossi v. City of Lakewood,* 363 Fed. Appx. 519, 519 (9th Cir. 2010). However, since the Court has read and considered Plaintiff's filings in their entirety in issuing this decision, this Court will grant Plaintiff permission to submit extra pages in this instance.

("Contrary to [P]laintiff's baseless accusations, the staff members whose names can be seen in the metadata have only had some ministerial or other clerical involvement in processing Court documents.") Judicial clerks do assist in the researching and drafting of orders in this Court, as is the case in all federal courts and indeed in most courts across the country. However, the ultimate decision-making and reasoning in Plaintiff's case as to motions filed with this Court have rested with and been approved by the judge who has signed the Court's orders, Judge Curiel. This Court will not countenance Plaintiff's repeated and paranoiac allegations that there is a conspiracy against him or that this Court has failed to read, review, or decide Plaintiff's motions. As for Plaintiff's request that Judge Curiel be recused from this case, Plaintiff has failed to show any facts supporting any improper interest or other factor supporting such recusal. Plaintiff merely insists that "[i]t appears he [Judge Curiel] is doing nothing or relying on his staff, showing differential treatment of Plaintiff or a disinterest in his case and right, not reading the briefing etc." ECF No. 221-1. Plaintiff's personal belief that an unfavorable outcome in his case can only stem from bias or lack of attention is wholly unsupported.

Further, the case Plaintiff cites in support of recusal fails to provide succor.[8] In *Liteky v. United States*, 510 U.S. 540, 555 (1994), the Supreme Court held that even where a judge may be "exceedingly ill disposed" toward a litigant, a judge is not recusable on that basis for bias or prejudice, since "his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings . . ." This Court has never been, nor ever given any indication of being, ill disposed toward

---

[8] Plaintiff's citation to *Berger v. United States*, 255 U.S. 22, 35 (1921), is similarly unavailing. *Berger* dealt with whether affidavits were sufficient to support a charge of bias against a judge, an issue not present in Plaintiff's case because he has not offered any affidavits. Additionally, *Berger* itself clearly states that the section of the Judicial Code at issue "was never intended . . . to enable a discontented litigant to oust a judge because of adverse rulings made." *Id.* at 31.

19-cv-00751-GPC

Plaintiff. In fact, the Court has been consistently lenient in allowing consideration of Plaintiff's filings despite their repeated procedural impropriety.[9] Far from showing bias against Plaintiff, the Court's actions evince the repeated exercise of lenity in favor of Plaintiff given his *pro se* status.

Plaintiff also believes that this Court ordered costs assessed against him, which Plaintiff then interprets as evidence of bias. ECF No. 221-1 at 50. As the Court already explained in its previous Order (ECF No. 218), Plaintiff has misread, or failed to read, the Court's Order at ECF No. 211. Contrary to Plaintiff's assertions, the Court did not order costs assessed against Plaintiff. The Court merely directed Plaintiff to comply with the procedure for determining what costs, if any, the prevailing party would be entitled to receive from Plaintiff. However, no decision has been made as to whether such costs should be assessed at all, given Plaintiff's indigent status. The Court requires a full examination of the circumstances in order to make that determination, as this Court has already explained in ECF No. 218 ("At this time, no decision has been issued as to how much, if anything, Plaintiff will need to pay Defendants. ECF No. 211 simply directs the parties to follow the appropriate procedure for presenting information to the Court as to what costs are claimed and allows Plaintiff the opportunity to contest costs once those costs are made clear to the Court.").[10] ECF No. 218 at 2. Thus, Plaintiff's contentions that the Court has ordered costs against him are mistaken. As such, each of the grounds relied upon to demonstrate bias are frivolous and unavailing.

---

[9] For example, this Court has chosen to consider Plaintiff's instant Motions for Reconsideration despite the fact that the Court would be justified in denying them solely on the basis of their procedural incorrectness, *supra* fn. 1.

[10] In addition to electronically downloading a copy of docketed filings from CM/ECF, Plaintiff may obtain a copy of ECF No. 218, or any other filing on the docket, by going to the office of the Clerk of Court in person.

19-cv-00751-GPC

**III.    Conclusion**

For the reasons stated above, this Court **HEREBY ORDERS** that Plaintiff's Motion for Reconsideration of ECF No. 199, Plaintiff's Motion for Reconsideration of ECF No. 200, and Plaintiff's Amended Application for Order (ECF No. 221) are **DENIED**. As the Clerk of Court was previously directed by this Court's Summary Judgment Order to close the case, this conclusively ends the matter. At this point, any remedy remaining to Plaintiff lies with the Appellate Court.

**IT IS SO ORDERED.**

Dated:  October 12, 2021

Hon. Gonzalo P. Curiel
United States District Judge

19-cv-00751-GPC